IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Civil No. 23-138 |
| | ) |
| LAVEN DAVIS | ) |

**Opinion and Order on Laven Davis's Motion to Dismiss**

Defendant Laven Davis is charged with one count of Distribution of Fentanyl Resulting in Serious Bodily Injury and Death, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C). ECF No. 1. Presently before the Court is Mr. Davis's Motion to Dismiss the sole charge against him. ECF No. 34. The government filed a Response in opposition to the Motion to Dismiss, to which Mr. Davis has filed a Reply. ECF Nos. 38 & 39. Following careful review of the parties' briefs and the applicable law, Mr. Davis's Motion to Dismiss will be denied.

I. **Relevant Background**

The charge against Mr. Davis states as follows:

> On or about November 28, 2022, in the Western District of Pennsylvania, defendant, LAVEN DAVIS, did knowingly, intentionally, and unlawfully distribute a quantity of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and serious bodily injury and death to B.G., a person known to the grand jury, resulted from the distribution and use of the mixture and substance.
> In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Indictment, ECF No. 1. The defense describes the following alleged facts, as reported by the Hermitage Police Department Report, Toxicology Report, and Coroner Report, after their involvement in the events following B.G.'s death:

> The decedent, B.G., suffered an alleged overdose and died in the morning of November 29, 2022. EMS arrived at the scene and performed CPR. Hermitage Police arrived at roughly the same time. B.G. failed to respond to life-saving efforts, including Narcan. Police decided to contact a detective because of

    the potential crime investigation. Then, EMS contacted the coroner, and eventually they transported B.G. to the morgue so that the coroner could perform an examination. B.G. was fully clothed when she was transported to the coroner. The coroner was unable to obtain a urine sample and requested a toxicology screen. The screen revealed that B.G. had multiple drugs in her system, including fentanyl, 4-ANPP, topiramate, gabapentin, naloxone, nordiazepam, and alprazolam. No autopsy was competed.

        The only evidence that police preserved from the scene of B.G.'s overdose was a cell phone. B.G.'s clothes were not preserved.

Mot. Dismiss 1-2.

## II.     Applicable Law

"Federal Rule of Criminal Procedure 12(b)(3)(B)(v) authorizes a defendant to lodge a pretrial challenge to the sufficiency of an indictment for 'failure to state an offense.'" *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016). In bringing such a motion, a defendant may "claim that an indictment fails to state an offense on the basis that the specific facts alleged ... fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Willis*, 844 F.3d at 162. In considering such a motion, the court takes the factual allegations in the Indictment as true. *United States v. Hird*, 913 F.3d 332, 339 (3d Cir. 2019). "In sum, the Court generally engages in 'a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury.'" *United States v. Miah*, 546 F. Supp. 3d 407, 418 (W.D. Pa. 2021) (quoting *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).

Federal Rule of Criminal Procedure 7 eliminated detailed pleading requirements and technicalities in an Indictment. *United States v. Huet*, 665 F.3d 588, 594 (3d. Cir. 2012). The Third Circuit Court of Appeals has "'eschewed any approach that insists upon magic words that perfectly mirror the statutory language of the charged offense: '[f]ailure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication.'" *United States v. Sayon*, No. CR 20-

325, 2023 WL 3645684, at *4 (W.D. Pa. May 25, 2023) (quoting *Stevenson*, 832 F.3d at 424). "'[A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (quoting *Huet*, 665 F.3d at 595).

A motion to dismiss, however, is "'not a permissible vehicle for addressing the sufficiency of the government's evidence.'" *United States v. Gillette*, 738 F.3d. 63, 74 (3d Cir. 2013) (quoting *Huet*, 665 F.3d at 595). Such challenges are reserved for trial. *Gillette*, 738 F.3d at 74. In a criminal case the "government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29," after the government has presented its evidence. *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (emphasis added).

### III. Discussion

Mr. Davis presents four arguments in favor of dismissal of Count One. First, he argues that Count One fails to state an offense. Second, he argues that the failure to preserve crucial evidence, without which the defense cannot effectively defend Mr. Davis, requires dismissal of Count One. Third, the government cannot establish that the drugs provided by Mr. Davis were the "but for" cause of the decedent's fatal overdose. Finally, the defense argues that § 841(b)(1)(C)'s mandatory minimum 20-year prison term does not require the government to establish proximate cause; and therefore, it is an unconstitutional strict liability offense.

### A. Failure to State an Offense

Mr. Davis argues that the Indictment fails to state an offense because it does not allege that the use of the distributed drug was the "but for" cause of B.G.'s death. Relevant to the defense argument, the Supreme Court in *Burrage v. United States* held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a "but for" cause of the death or injury." 571 U.S. 204, 218–19 (2014). Mr. Davis thus concludes that the failure to include "but for" causation language in Count One, the Indictment fails to state an offense.

Mr. Davis also argues that the Indictment fails to state an offense because Count One fails to allege the essential element of the offense: that serious bodily injury or death resulted from the use of the "substance," *i.e.*, fentanyl. Mot. Dismiss 3 (citing 21 U.S.C. § 841(b)(C)). According to Mr. Davis, the fatal flaw in the Indictment is language stating that, "serious bodily injury" and death resulted from use of the "*mixture and substance*" containing fentanyl, rather than using language alleging that, "serious bodily injury and death" resulted from the use of the controlled substance, fentanyl.

In Response, the government points to the liberal pleading rules for stating an offense in an Indictment, as articulated by Rule 7 and applicable case law. The government concludes that Count One clearly and sufficiently charges Mr. Davis with distributing fentanyl that resulted in the death of B.G. Thus, the government maintains that Count One complies with the applicable case law, and therefore the charge is not deficient.

The Court agrees with the government's position. Count One of the Indictment informs Mr. Davis that he is charged with violating 21 U.S.C. 841(a)(1) and 841(b)(1)(C). It sufficiently

informs him that the government must prove that, on November 28, 2022, Mr. Davis knowingly, intentionally, and unlawfully distributed a quantity of a mixture and substance containing a detectable amount of fentanyl; that fentanyl is a Schedule II controlled substance; and that serious bodily injury and death resulted from the distribution and subsequent use of the mixture and substance. Under Third Circuit case law, the Court finds that the government is not required to insert the phrase ""but for"" in the Indictment, as the defendant is sufficiently informed that he is charged with distributing a controlled substance that resulted in serious bodily injury and death. The statutory language in fact states: "if death or serious bodily injury *results from* the use of such substance." 21 U.S.C. § 841(b)(1)(C) (emphasis added). Finally, the language of Count One is clear that the substance the government alleges Mr. Davis distributed, and that caused the harm to the decedent, is fentanyl. "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Bergrin*, 650 F.3d at 264. The Indictment here provides sufficient specificity. The Court concludes that the language of the Indictment is not deficient. Mr. Davis's argument that the Indictment must be dismissed, because Count One fails to state an offense, will be denied.

### B. Failure to Preserve Potentially Exculpatory Evidence

The defense next argues that the Indictment must be dismissed because the prosecution team failed to preserve potentially exculpatory evidence; that is, they failed to preserve the clothes the decedent was wearing at the time of death. Mr. Davis argues that the failure to preserve the clothes violated his due process rights. Mr. Davis maintains that the decedent's clothes contained her urine, which would have shown the type (and timing) of drugs she most recently used. He argues that urine testing would have shown that the decedent's fentanyl use

5

was more distant in time than other substances. Mr. Davis thus argues that had the clothes been preserved, the drug-tested urine from the clothes would have demonstrated that the cause of death was a substance other than fentanyl. Mr. Davis suggests that the alternate controlled substance causing death is likely heroin. Heroin, Mr. Davis proffers, would have persisted in a decedent's bloodstream for only minutes, whereas heroin would appear in urine for a much longer time. Such evidence, he argues, is potentially exculpatory and requires dismissal of the Indictment.

Due process requires that the prosecution disclose exculpatory evidence within its possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Where the government fails to preserve potentially exculpatory evidence, however, the right to due process is violated only if the evidence possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that a defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). The Supreme Court has stated that the failure to preserve potentially exculpatory evidence implicates due process concerns only when the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "To establish a due process violation based on law enforcement's failure to preserve potentially exculpatory evidence, a defendant must show: that the potentially exculpatory nature of the evidence was apparent at the time of destruction or loss[1]; the lack of 'comparable evidence by other reasonably available means'[2]; and that the government acted in 'bad faith.'"[3] *United States v. Henry*, 842 F. App'x 809, 814 (3d Cir. 2021).

---

[1] Citing *California v. Trombetta*, 467 U.S. 479, 489 (1984).
[2] Quoting *Trombetta*, 467 U.S. at 489.
[3] Quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

In this case, the EMS team transported the clothed decedent to the morgue, so that the coroner could perform an examination. The coroner was unable to obtain a urine sample and requested a toxicology screen. Thereafter, the decedent's clothes were not preserved. According to the government, the coroner does not retain clothing, and the coroner's standard practice is to return clothing to the decedent's family.[4] Gov. Resp. 13.

There is no evidence that law enforcement deliberately chose not to retain the decedent's clothing based upon an awareness of its potential evidentiary value. Instead, it seems that the clothing was not retained by the coroner, who appears to have returned the clothing to the decedent's family. None of the above actions indicate bad faith on the part of the government. At worst, the failure to retain the clothing and perform urinalysis tests on any urine found on the clothing is "negligent." *Youngblood*, 488 U.S. at 58. The present evidence, however, supports the conclusion that no member of the prosecution team ever had custody of the decedent's clothing. Because there is no showing of bad faith, Mr. Davis cannot demonstrate that his due process rights were violated by the failure to preserve the decedent's clothing. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

Moreover, Mr. Davis's argument, that the clothing contained testable urine, the results of which would prove exculpatory, is largely based upon speculation. Mr. Davis is aware of the toxicology report results showing that the decedent had multiple drugs in her system besides fentanyl. The toxicology report did not reveal that the decedent had heroin in her bloodstream. Presumably, it is the absence of heroin in the bloodstream that is the impetus for the defense's

---

[4] The government does not definitely state that the coroner returned the clothing to the family of the decedent.

conclusory statement that, had the decedent taken heroin, such would not have appeared in her blood, but might have appeared in her urine.[5] The defense's assertion that heroin would have been found in the decedent's urine is wholly speculative. The Court finds that Mr. Davis has not established that the failure to preserve the decedent's clothing violated his due process rights. Therefore, the Court will deny the defense argument that dismissal of the Indictment is required because the prosecution failed to preserve the decedent's clothing

### C. "But For" Causation Cannot be Established

Mr. Davis argues that the government cannot prove that the distribution of fentanyl to the decedent by Mr. Davis is the "but for" cause of death of the decedent. Here, the toxicology report shows that there were multiple drugs present in the decedent's system. Mr. Davis argues that, under Supreme Court precedent, the presence of multiple drugs allows only for the inference that fentanyl was a contributing factor of the cause of death, but it is not sufficient evidence to show that fentanyl was the "but for" cause of death. *Burrage*, 571 U.S. at 218–19 (2014). Mr. Davis thus argues that the Indictment must be dismissed, since the government is unable to prove that fentanyl was the "but for" cause of death.

The defense's argument is essentially a premature challenge to the sufficiency of the government's evidence. *DeLaurentis*, 230 F.3d at 661 ("government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29," after the government has presented its evidence).

---

[5] The coroner was unable to obtain a urine sample from the decedent. The defense is free to cross-examine the coroner as to his actions with regard to the decedent's clothes. *See United States v. Henry*, 842 F. App'x 809, 815 (3d Cir. 2021) (defendant could have elicited testimony of officers who handled his (unpreserved) luggage to prove the missing contents and he could have asked witnesses who searched his luggage about the contents of his bags).

Regardless of the defense's assessment of the toxicology report results and the conclusions to be drawn therefrom, the government is entitled to present its evidence to a jury. In particular, the government cites to a report prepared by a pathologist who reviewed the toxicology report, and concluded that the amount of fentanyl in the decedent's system "'is more than sufficient to be the primary cause of death.'" Gov. Resp. at 18 (quoting pathologist's report). Accordingly, Mr. Davis's Motion to Dismiss, based upon his argument that "but for" causation is absent, will be denied as a premature challenge to the sufficiency of the evidence.

### D. Whether the "Death Resulting" Language of Section 841(b)(1)(C) is an Unconstitutional Strict Liability Offense

Relevant to Mr. Davis's final argument, the applicable penalty statute states in relevant part as follows:

> (C) In the case of a controlled substance in schedule I or II, . . . , such person shall be sentenced to a term of imprisonment of not more than 20 years and if *death* or serious bodily injury *results* from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, . . . .

21 U.S.C. § 841(b)(1)(C) (emphasis added). Mr. Davis argues that the above emphasized language, requiring that the decedent's death *results from* the use of a substance, is an unconstitutional strict liability offense. He argues that since the government is not required, under the statute, to prove a proximate cause of death, a defendant would be liable for any death that occurs following the distribution of a controlled substance.

"Though the statute does not define whether 'results from' means proximate or actual causation, [the Third Circuit] Court answered this question in *United States v. Robinson*, 167 F.3d 824 (3d Cir. 1999)." *United States v. Jacobs*, 21 F.4th 106, 114 (3d Cir. 2021). In *Robinson*, the Third Circuit explained that the "plain language of § 841(b)(1)(C) 'neither requires nor indicates that a district court must find that death resulting from the use of a drug distributed

9

by a defendant was a reasonably foreseeable event.'" *Jacobs*, 21 F.4th at 114 (quoting *Robinson*, 167 F.3d at 830). "Instead, the provision puts drug dealers on 'clear notice that their sentences will be enhanced if people die from using the drugs they distribute.'" *Jacobs*, 21 F.4th at 114 (quoting *Robinson*, 167 F.3d at 830). "Because Congress recognized that 'risk is inherent in the [drug] product,' it intended to enhance a defendant's sentence whenever death resulted from the distribution of certain drugs, regardless of whether that defendant could have reasonably foreseen that death would result." *Jacobs*, 21 F.4th at 114 (quoting *Robinson*, 167 F.3d at 831). In other words, a drug distributor who knowingly distributes a controlled substance, such as fentanyl, that inherently contains the risk of causing serious bodily injury or death, does so at his peril, due to the foreseeable likelihood that such a substance would cause death or serious bodily injury. Accordingly, the Court will deny the defense's argument that the Indictment should be dismissed because § 841(b)(1)(C) is an unconstitutional strict liability offense.

### IV.  Conclusion

For the reasons explained above, the Court denies each of Mr. Davis's reasons for dismissal of the Indictment. Accordingly, Defendant Laven Davis's Motion to Dismiss the Indictment (ECF No. 34) is DENIED.

Dated: <u>February 21, 2025</u>

                                                                                                                               _____
                                                            Marilyn J. Horan
                                                            United States District Court Judge