# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 23-138 (RBW) |
| | ) | |
| LAVEN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION ORDER</u>

Before the Court for its rulings are the Defendant's Motion to Compel Pursuant to F. R. Crim. P. 16(a)(1)(G) As To Dr. Eric Vey ("Def's. Mot. to Compel"), ECF No. 130; the government's oral motion made during the September 12, 2025, pre-trial hearing challenging the defendant's expert disclosure regarding Dr. Andrew Baker ("Gov's. Oral Mot."); and the Defendant's Motion in Limine to Preclude Dr. Eric Vey From Testifying As An Expert Witness Under F.R.E. 702 ("Def's. Mot. in Limine"), ECF No. 133. For the reasons that follow, the Court grants the defendant's motion to compel, denies without prejudice the government's oral motion, and grants without prejudice the defendant's motion in limine.

## I.    The Defendant's Motion to Compel

The defendant contends that the expert disclosure regarding Dr. Vey provided to the defendant by the government pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) "contain[s] little substance . . . [and] do[es] not satisfy the requirements of Rule 16." Def's. Mot. to Compel at 2–3. Specifically, the defendant argues that "[g]iven [the expert disclosure's] brevity, [it] do[es] not constitute 'a complete statement of all opinions that the government will elicit from [Dr. Vey] in [the government's] case-in-chief, or during its rebuttal." Id. at 3 (quoting Fed. R. Crim. P. 16(a)(1)(G)(iii)). Additionally, according to the defendant, "[t]he

disclosure[] . . . provides no bases or reasons for the opinions and . . . merely [provides] conclusory assertions [as t]he statements do not cite any guidelines, manuals, publications, or other authorities that are regularly cited in expert reports." Id. Because of these alleged inadequacies, the defendant argues that he "cannot assess and challenge the relevance or admissibility of [Dr. Vey's] testimony" or "investigat[e], prepare cross-examination, [or] prepar[e] its own expert." Id.; Response To The Government's Supplemental Filing At ECF No. 156 And Request For Hearing ("Def's. Response"), at 2, ECF No. 157.

The government responds that "the defense is improperly attempting to use Rule 16(a)(1)(G) as a tactic to exclude evidence instead of as a prophylactic trial preparation," United States Response To Additional Defense Motions ("Gov's. Response"), at 2, ECF No. 145, and that it "believes that the [expert] disclosure[]" complies with the Rule. Id. at 1. On September 25, 2025, the government filed a document titled "Supplemental Expert Disclosure," in which the government asserts that Dr. Vey's proposed testimony "regarding the significance of the fentanyl level and the significance vel non of postmortem distribution, is supported by" eight "publications/studies." Supplemental Expert Disclosure ("Gov's. Supp. Disclosure"), at 1–2, ECF No. 156. However, the government's Supplemental Expert Disclosure does not detail the substance of the various "publications/studies" and merely lists the titles of them. Id.

Following the pre-trial hearing in this case, and after the government provided Dr. Vey's full expert disclosure, the Court issued an order withholding a decision on whether to grant the defendant's motion to compel regarding Dr. Vey's expert disclosure until the Court concluded its consideration of the additional information provided by the government, both during the pre-trial hearing and in the supplement referenced above. See Order (Sept. 16, 2025) at 1–2, ECF No. 149.

The Court added in the Order that if it were to conclude that the expert disclosure regarding Dr. Vey's "at least" provided adequate information regarding:

> (1) the number of individuals who were determined to have died as the result of a fentanyl overdose that Dr. Vey considered in reaching his opinion as to the decedent's cause of death; and (2) why the amount of fentanyl found in the decedent's body, as compared to those other individuals, informed his opinion in this case, then the Court will deny the motion.

Id. Having now concluded its review, the Court agrees that the expert disclosure regarding Dr. Vey is inadequate because it does not include the bases for Dr. Vey's proposed expert opinions.

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the government is required to provide "a written summary of any testimony that the government intends to use" as evidence at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence if requested by the defendant. Specifically, the government's written summary must contain: (1) "a complete statement of all opinions that the government will elicit from the witness"; (2) "the bases and reasons for" the expert's opinions; (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii). The "purpose of Rule 16(a)(1)(G) is to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Mitchell, 2013 WL 12202563, at *1 (W.D. Pa. Oct. 7, 2013) (citing Fed. R. Crim. P. 16 advisory committee notes).

During the pre-trial hearing in this case on September 12, 2025, the defendant clarified that he does not contest Dr. Vey's qualifications, or the list of his previous testimony provided in the expert disclosure, but only contests that he was not provided with a complete statement of all the

proposed opinions Dr. Vey will offer and the bases and reasons for such opinions. See Def's. Response, at 2.

According to the government's expert disclosure regarding Dr. Vey, the government asserts that "Dr. Vey's testimony will include an explanation of the significance of the" "95 ng per mL" "blood level (concentration) of fentanyl" allegedly found in the decedent's body. See Def's. Mot. to Compel at ECF No. 130-2, at 1, ECF No. 130-3, at 1. Additionally, the government informed the defendant that Dr. Vey's proposed testimony will include, among other things, (1) "an explanation of the significance of the physical observations of Ms. Grose's body at the death scene"; (2) "the significance of the absence of observations that would indicate a non-toxicological cause of death"; and (3) "the significance of the presence of observations that indicate a toxicological/overdose cause of death, including fluid exuding into/from Ms. Grose's mouth area that is strong evidence of pulmonary edema triggered by an overdose." See Def's. Mot. to Compel at ECF No. 130-2, at 1.

The Court now concludes that the government has adequately informed the defendant of a complete "statement of all opinions that the government will elicit from" Dr. Vey. The purpose of the rule is to put the defendant on notice of what testimony to expect from the witness, and the Court is satisfied that the government has at least satisfied this obligation.

However, in regards to the "bases . . . for" Dr. Vey's opinions, see Fed. R. Crim. P. 16(a)(1)(G)(iii), the Court is not satisfied that the government has provided the defendant with the information required by the rule. In the Court's September 16, 2025, Order, it explicitly stated that the government's expert disclosure regarding Dr. Vey should at a minimum include "the number of individuals who were determined to have died as the result of a fentanyl overdose that Dr. Vey considered in reaching his opinion" and "why the amount of fentanyl found in the

4

decedent's body, as compared to those other individuals, informed his opinion in this case." September 16, 2025, Order, at 1–2. The Court concluded that with this information, the government will adequately provide the defendant with the "bases" for Dr. Vey's proposed expert opinions. Neither the expert disclosure regarding Dr. Vey's proposed testimony provided by the government in the pre-trial hearing or the supplemental disclosure currently provide this information. Instead, the expert disclosure merely includes a copy of the toxicology report, the coroner's report, the paramedic's report, pictures of the decedent's body, the decedent's death certificate, the decedent's historical medical reports, and Dr. Vey's expert witness service contract with the government. Additionally, the supplemental disclosure provided by the government discusses the reasons why, in the government's view, Dr. Vey is not required to cite to publications and studies, or rely on an autopsy of the decedent, that inform his opinions. See generally Gov's. Supp. Disclosure, at 2–5.

Therefore, at present, the expert disclosure regarding Dr. Vey summarily concludes that the decedent's "blood level (concentration) of fentanyl" was "nearly 32 times higher than the lower lethal threshold, and nearly 12 times higher than the average postmortem lethal fentanyl level of 8 ng per mL." See Def's. Mot. to Compel, at ECF No. 130-3, at 1. This minimally suffices as the "reason" for Dr. Vey's opinions, but it does not adequately inform the defendant as to the bases for his opinion, e.g., the sample size of individuals the "lower lethal threshold" and "average postmortem lethal fentanyl level" is based on, or a publication or study that he relied on to conclude that the decedent's blood level (concentration) of fentanyl was at a lethal level.[1]

---

[1] Cf. United States v. Katzin, 94 F. App'x 134 (3d Cir. 2004) (The government satisfied requirement that it disclose to defendant "a written summary" of case agent's expert testimony, on charges of conspiracy to distribute in excess of 500 grams of methamphetamine, and using a communication facility in furtherance of a drug offense, where, prior to trial, defendant was provided with 469-page affidavit in which the agent explained how, based on his experience and training, he identified telephone calls with cryptic language, codes, and drug jargon used by co-conspirators, and provided his opinion regarding the meaning of the calls).

For these reasons, the defendant's motion to compel is **GRANTED** and the government shall therefore provide to the defendant information regarding (1) the number of individuals who were determined to have died as the result of a fentanyl overdose that Dr. Vey considered in reaching his opinion as to the decedent's cause of death; and (2) why the amount of fentanyl found in the decedent's body, as compared to those other individuals, informed his opinion in this case. Because the government has not yet disclosed this information to the defendant, and the start of the trial in this case is only 6 days away, the government shall comply with this Order on or before October 3, 2025. See Fed. R. Crim. P. 16(d)(2).[2]

## II.    The Government's Oral Motion

During the pre-trial hearing—and after the defendant challenged the government's expert disclosure regarding three proposed government expert witnesses—the government orally moved to challenge the adequacy of the defendant's expert disclosure regarding Dr. Andrew Baker. For the reasons below, the government's oral motion is **DENIED WITHOUT PREJUDICE**.

According to the defendant's expert disclosure regarding Dr. Baker provided to the Court by the defendant during the pre-trial hearing (marked by the defendant as "Defense A 9.12.2025"), Dr. Baker's "complete statement of all opinions" include the following: (1) the decedent "should have had a complete autopsy as part of her death investigation" because without one, "one cannot opine, to a reasonable degree of medical certainty, that" the decedent's "death was due to fentanyl toxicity"; (2) "Dr. Vey incorrectly claims that [the decedent's] postmortem blood fentanyl concentration was 'fatal'" since "one can only assert that a drug was 'fatal' . . . after being

---

[2] If a party fails to comply with this rule, the court may:

    (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
    (B) grant a continuance;
    (C) prohibit that party from introducing the undisclosed evidence; or
    (D) enter any other order that is just under the circumstances.

interpreted in the context of the autopsy findings"; (3) "fentanyl concentrations in the same range as, or higher than, [the decedent's] have been recorded in the living, or in decedents whose cause of death turned out not be fentanyl-related"; (4) "Dr. Vey's written opinions (to date) do not provide a source for [his] statement" regarding "lethal postmortem blood levels of fentanyl"; (5) the reports provided to Dr. Baker do not support the conclusion that the decedent experienced pulmonary edema; (6) "the existence of alleged domestic violence cannot be ignored in this case"; and (7) the decedent's "cause and manner of death are undetermined" absent an autopsy. See generally Defense A 9.12.2025 at, 4–12. The Court finds that the defendant has supplied the government with "a complete statement of all opinions that the defendant will elicit from" Dr. Baker as required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii).

As for Dr. Baker's "bases and reasons for" his opinions in the expert disclosure report, the Court also finds that the defendant has thoroughly supplied the government with the bases and reasons for Dr. Baker's proposed opinions. First, Dr. Baker cites scientific studies and reports throughout his expert disclosure report to support his opinions. See e.g., Defense A 9.12.2025 at, 5–6, 9–10 (citing at least five studies or reports explaining the source for Dr. Baker's proposed opinions). Second, Dr. Baker cites multiple studies for his proposed opinion challenging Dr. Vey's proposed opinion regarding the alleged "fatal" fentanyl concentration in the decedent's blood. See generally, id. at 6–8. Third, Dr. Baker uses various reports and other information (i.e. the coroner's report, the police report, and pictures of the decedent's body) to support his proposed opinions. Thus, unlike the expert disclosure regarding Dr. Vey, the expert disclosure regarding Dr. Baker thoroughly explains his bases and reasons for his proposed opinions. Therefore, the Court finds that the defendant has also satisfied this requirement of Federal Rule of Criminal Procedure 16(b)(1)(C)(iii).

However, because Defense A 9.12.2025 does not include Dr. Baker's "qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, [Dr. Baker] has testified as an expert at trial or by deposition[,]" the Court denies the government's oral motion without prejudice. Therefore, if the government informs the Court in writing that the defendant has not supplied this information to the government, then the Court will reconsider the government's oral motion.

## III.    The Defendant's Motion in Limine

The Court next addresses the defendant's motion in limine to exclude Dr. Vey from testifying as an expert pursuant to Federal Rule of Evidence 702. The defendant requests that the court hold a hearing "to determine whether the testimony that will be presented by the Government through Dr. Eric Vey meets the admissibility requirements under F.R.E. 702" and "bar the Government from presenting Dr. Eric Vey as an expert." Def's. Mot. in Limine, at 14; Def's. Response, at 2.

Because the Court has already described the proposed opinions that the government expects Dr. Vey will offer during his testimony, supra, the Court does not repeat them here.

Federal Rule of Evidence 702 provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if the proponent demonstrates to the court that it is more likely than not that:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

8

In deciding whether to admit expert testimony, a court must decide whether there has been a showing, by a preponderance of the evidence, that the expert testimony will be "reliable and helpful." See Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments; see also Bourjaily v. United States, 483 U.S. 171, 175–76 (1987) ("admissibility determinations [must] be established by a preponderance of proof").

In order to assess "the reliability of scientific expert testimony" trial courts in this Circuit use "a non-exclusive checklist" identified in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and United States v. Downing, 753 F.2d 1224, 1238–41 (3d Cir. 1985). Those non-exclusive factors are the following:

1. whether a method consists of a testable hypothesis;
2. whether the method has been subject to peer review;
3. the known or potential rate of error;
4. the existence and maintenance of standards controlling the technique's operation;
5. whether the method is generally accepted;
6. the relationship of the technique to methods which have been established to be reliable;
7. the qualifications of the expert witness testifying based on the methodology; and
8. the non-judicial uses to which the method has been put.

See Elcock v. Kmart Corp., 233 F.3d 734, 745–46 (3d Cir. 2000). The Court's 702 inquiry is "a flexible one." Daubert, 509 U.S. at 594. Thus, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595.

The defendant first contends that Dr. Vey's proposed testimony is not based upon sufficient facts or data because Dr. Vey "does not cite any facts or data that would justify his opinion that the cause of [the decedent's] death was an overdose." Def.'s Mot. in Limine, at 8. According to the defendant, Dr. Vey's proposed opinions are merely "based upon the post-mortem, blind-stick

blood draw and the investigator's notes," id., specifically the substance levels "detected in the decedent's blood as listed on [the] toxicology report by Jared McAtee." Id. at 10.

The government does not seem to dispute that Dr. Vey's proposed testimony will rely on the facts and data provided in the toxicology report and the coroner's report. See Def's. Mot. in Limine at ECF No. 133-1, at 1, ECF No. 133-2 at 1. If the existence of this evidence is in fact properly established during the trial, the Court will not preclude Dr. Vey from relying on these reports. See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 286 F.R.D. 266, 271 (W.D. Pa. 2012) ("[I]t is well-settled that one expert may rely upon another expert's opinion in formulating his own.").

The defendant next contends that Dr. Vey's proposed opinion "that no autopsy was necessary to reliably determine the cause of the decedent's death . . . flies in the face of the practices of his profession" as a pathologist. Def's. Mot. in Limine, at 8–9; see also Def's. Response, at 3. As support for this position, the defendant offers information from the National Association of Medical Examiners and other scientific reports that allegedly conflicts with the proposed standards relied on by Dr. Vey. Id. at 9–10. In response, the government cites out of circuit case law to argue that there "'is no requirement that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness.'" Gov's. Supp. Disclosure, at 2 (quoting Best v. Lowe's Home Centers, Inc., 563 F.3d 171, 180–81 (6th Cir. 2009)).

To the extent that the Sixth Circuit law supports the government's position, the same Sixth Circuit case cited by the government details that the expert in that case also used his medical knowledge, compiled a list of possible causes for the injury in that case, and methodically ruled out other potential causes of the alleged illness the appellant was experiencing. Best, 563 F.3d at

180–81.  Moreover, the expert in the Sixth Circuit case discussed his treatment of other patients who developed the same symptoms allegedly experienced by the appellant, after being involved in the same kind of accident that the appellant experienced.  Id. at 181.  The Court does not have similar information utilized by Dr. Vey at this time.

Specifically, the Court does not know the principles or methodology that Dr. Vey utilized in forming his proposed opinions.  Dr Vey's expert disclosure report provided to the Court during the pre-trial hearing and the supplemental disclosure provided by the government on September 25, 2025, do not detail the principles or methodology utilized by Dr. Vey, but only list the "publications/studies" that allegedly support the proposed opinions Dr. Vey will provide.  Besides listing these eight "publications/studies" in the supplement, the government does not explain the substance of each "publication[]/stud[y]" or how they provide support for the proposed opinions Dr. Vey will offer.  For example, the Court cannot assess the reliability of Dr. Vey's proposed opinions because it does not know, i.e., (1) whether Dr. Vey's method consists of testable hypotheses, (2) the known or potential rate of error, (3) whether the method used by Dr. Vey is generally accepted, or (4) information about the levels of fentanyl detected in other individuals that Dr. Vey has studied and how that information informs his opinion about the decedent's cause of death.  See Elcock, 233 F.3d at 745–46.  Cf. Ramsey v. Salvation Army, 2024 WL 5456282, *6 (W.D. Pa. Nov. 27, 2024), adopted, 2025 WL 414293, *2 (W.D. Pa. Feb. 6, 2025) (finding that Dr. Vey's conclusions were supported not only by "his expertise and experience," but also "scientific treatises and articles to which he cite[d] in his report"); Hoffman v. Kresevig, 2010 WL 1023938, *2 (W.D. Pa. 2010) (explaining that "[t]he basis for [Dr. Vey's] opinion was his review of periodicals and textbooks in which he looked for cases in which [similar] types of injuries had been found and the circumstances under which those injuries had been inflicted.").

11

Because the Court cannot assess "the reliability of [Dr. Vey's] scientific expert testimony," the defendant's motion is **GRANTED WITHOUT PREJUDICE.**  If the government has made a sufficient showing of the principles and methods that Dr. Vey used, and how those principles and methods were applied in this case, then the Court will reconsider whether Dr. Vey may testify as an expert.  See Elcock, 233 F.3d at 745 (explaining that a district court should hold a Daubert hearing to fully assess an expert's "analytical processes" to determine the reliability of the expert's methods); see also Padillas v. Stork-Gamco, Inc. 186 F.3d 412, 417–18 (3d Cir. 1999) (holding that the district court abused its discretion in excluding an expert's opinion without conducting an in limine hearing focused on the Daubert reliability of his testimony).

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Compel Pursuant to F. R. Crim. P. 16(a)(1)(G) As To Dr. Eric Vey, ECF No. 130, is **GRANTED** and the government shall therefore provide to the defendant information regarding (1) the number of individuals who were determined to have died as the result of a fentanyl overdose that Dr. Vey considered in reaching his opinion as to the decedent's cause of death; and (2) why the amount of fentanyl detected in the decedent's body, as compared to those other individuals, informed his opinion in this case.  Because the government has not yet disclosed this information to the defendant, and the start of the trial in this case is only 6 days away, the government shall comply with this Order on or before October 3, 2025.  See Fed. R. Crim. P. 16(d)(2).  It is further

**ORDERED** that the government's oral motion made during the September 12, 2025, pre-trial hearing challenging the defendant's expert disclosure regarding Dr. Andrew Baker is **DENIED WITHOUT PREJUDICE.**  Therefore, if the government informs the Court in writing that the defendant has not supplied Dr. Baker's "qualifications, including a list of all publications

12

authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, [Dr. Baker] has testified as an expert at trial or by deposition[,]" then the Court will reconsider the government's oral motion.  It is further

ORDERED that the Defendant's Motion in Limine to Preclude Dr. Eric Vey From Testifying As An Expert Witness Under F.R.E. 702, ECF No. 133, is **GRANTED WITHOUT PREJUDICE**.  If the government has made a sufficient showing of the principles and methods that Dr. Vey used, and how those principles and methods were applied in this case, then the Court will reconsider whether Dr. Vey may testify as an expert.

**SO ORDERED** this 30th day of September, 2025.

REGGIE B. WALTON
United States District Judge